United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER N. LOUKIANOFF, et a., | No. C 12-00296 CRB |
| Plaintiffs, | **ORDER GRANTING MOTION TO DISMISS** |
| v. | |
| ALEXANDER "SASHA" GALITSKY, et al., | |
| Defendants. | |

    This dispute is a result of the apparent fall-out between business partners in a venture capital firm. Plaintiff Peter Loukianoff ("Plaintiff") and Defendant Alexander "Sasha" Galitsky ("Defendant") created a venture capital firm together named Almaz sometime in 2007. They then created and funded a venture fund that invested in Russian Commonwealth of Independent States ("CIS") technology companies ("Fund I"). This fund was governed by a partnership and shareholder agreement. Defendant then allegedly began creating and funding a second fund ("Fund II"), with the Almaz name, but without the participation of Plaintiff. Plaintiff filed suit against Defendant for violation of the Lanham Act (15 U.S.C. § 1125(a)), the California Uniform Trade Secrets Act (Cal. Civ. Code §§ 3426 *et seq.*), the California Unfair Business Practices Act (Cal. Bus. & Prof. Code §§ 17200 *et seq.*), as well as tortious interference with prospective economic relations, defamation, common counts, and declaratory relief. Defendant now moves to dismiss, arguing that the contract governing the parties' relationship has a forum selection clause requiring litigation in the Cayman

Islands, or in the alternative, requesting an order to compel arbitration under the same agreements. Since the partnership agreement governing Fund I is the only written partnership agreement between the parties, and the allegations relate to issues covered in the Agreement, the Court GRANTS the motion to dismiss. The Court DECLINES to rule on the motion for preliminary injunction.

## I. FACTUAL BACKGROUND

Around early 2007, Plaintiff, Defendant and a third party, Joe Bowman, decided to partner together and create an independent business that would establish and manage venture capital funds, which would then be invested in technology companies in Russia and the CIS. Compl. (dkt. 1) ¶ 15. Plaintiff was based in Silicon Valley because his primary responsibility was soliciting U.S. capital investment and managing Almaz's domestic operations. Loukianoff Decl. (dkt. 17) ¶ 4. Defendant and Bowman were located in Europe where they had better access to the Russian start-up market. Id. In the second quarter of 2007, Plaintiff, Defendant, and Bowman each provided checks to Bowman for the purpose of forming the partnership. Compl. ¶ 17. In the summer of 2007, the three "decided that the name of their partnership would be called 'Almaz,' 'Almaz Capital Partners' and/or 'Almaz Capital' (the 'Almaz Mark')." Id. ¶ 18. "In November 2007, Plaintiff, Defendant and Bowman created a Cayman Islands company called Almaz Capital Partners, Ltd. . . . ." Id. ¶ 23.

The parties entered into the Partnership Agreement in June 2010. See Galitsky Decl. (dkt. 10) Ex. A. Galitsky and Loukianoff are the "Initial Class A Shareholders"; Mr. Charles Ryan is the "Initial Class B Shareholder"; and Messrs. Pavel Bogdonov and Yuriy Fedorov are the "Initial Class C Shareholders." Id. at 4. The Partnership Agreement defines the shareholders' respective rights and obligations in connection with the management of the partnership and the partnership's assets and investments. The partnership's investments are made through "funds," each of which has a "general partner" and "limited partners" – third party entities or individuals. Galitsky Decl. ¶ 3. It is customary that the general partners and limited partners of a fund, in turn, enter into an agreement. Id. In this case, Almaz, as general partner, formed one fund – Almaz Capital Russia Fund I, L.P. ("Fund I") – which is

2

governed by the "Amended and Restated Agreement of Limited Partnership of Almaz Capital Russia Fund I, L.P. Id.<sup>1</sup>

The Partnership Agreement contains a choice-of-law provision, providing that: "[It] will be governed by and construed in accordance with the laws of the Cayman Islands . . . . In furtherance of the foregoing, the internal law of the Cayman Islands will control the interpretation and construction of this Agreement, even if under such jurisdiction's choice of law or conflict of law analysis, the substantive law of some other jurisdiction would ordinarily apply." Galitsky Decl. Ex. A at 17. The Partnership Agreement also states that:

> [E]ach of the parties hereto hereby irrevocably and unconditionally submits, for itself or himself and its or his property, to the exclusive jurisdiction of any Cayman Islands court and any appellate court presiding thereover, in any action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereunder . . . . Each of the parties hereto irrevocably and unconditionally waives, to the fullest extent it or he may legally and effectively do so, any objection that it or he may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereunder or thereunder in any court sitting in the Cayman Islands. Each of the parties hereto irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

Galitsky Decl. Ex. A at 18.

Plaintiff alleges that in October 2011, Defendant "began using the Almaz Logo and the Almaz Mark and the goodwill associated with the mark and logo, to elicit venture capital investments to be placed by Defendant into a separate fund to be managed without Plaintiff's involvement." Compl. ¶ 38. Specifically, Plaintiff asserts that on October 20, 2011, Defendant notified Plaintiff by email that "he and some other partners and investors in Fund I were going to start a new fund for investing in Russia without Plaintiff's involvement ('Fund II')." Id. ¶ 40. Plaintiff replied: "We have not decided who will remain in control of the Almaz brand after the separation and certainly did not agree on the terms of my exit. . . .

---

<sup>1</sup> The parties' written agreements are not attached to the Complaint, but appear to be referenced in paragraph 43. See Compl. ¶ 43 (In an email from Mr. Loukianoff to Mr. Galitsky, Plaintiff states, "You have no right to appoint a partner or offer employment to anyone else, without my consent – as this is in direct violation of our agreement and the shareholders agreement for fund I.").

3

1 However, I think we should tell the [limited partners of Fund I] that we will continue to work
2 together to successfully complete Almaz I, and that there is an intention to raise another fund
3 in the future, but not under the same management." Id. ¶ 41. Thereafter, Plaintiff and
4 Defendant attempted to negotiate the terms by which Defendant could proceed with a
5 separate fund. Id. ¶ 42. "Throughout the entirety of these negotiations, Plaintiff insisted on
6 being compensated for his half of the [Almaz] brand value, including all intellectual property
7 rights such as trademarks and copyrights, to no avail." Id. Plaintiff then filed this action.
8 Defendant then moved to dismiss pursuant to the forum selection clause.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move to dismiss an action for improper venue. Under Ninth Circuit law, a motion to dismiss based on a forum selection clause is treated as a challenge to venue under Rule 12(b)(3), and the district court therefore may consider facts and pleadings outside the scope of the complaint. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). The Court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party. Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004). "Whether to hold a hearing on disputed facts and the scope and method of the hearing is within the sound discretion of the district court." Id. at 1139.

Generally, courts will enforce a forum selection clause, even one that requires submission of the dispute to a foreign court, unless the party challenging the clause can clearly show that its enforcement would be "unreasonable under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). Forum selection clauses selecting a specific venue are mandatory when the parties submit to the "exclusive jurisdiction" of that venue. Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989) ("[W]here venue is specified with mandatory language, the clause will be enforced.").

Consistent with the "presumption in favor of enforcing [a] forum selection clause," TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc., 915 F.2d 1351, 1355 (9th Cir. 1990), the Ninth Circuit has held that a forum selection clause must be enforced unless

4

1  the party opposing it clearly shows (1) that the clause "was the result of fraud, undue
2  influence, or overweening bargaining power," (2) that forum identified in the clause is "so
3  'gravely difficult and inconvenient' that the complaining party will 'for all practical purposes
4  be deprived of its day in court,'" or (3) that enforcement of the clause would "contravene a
5  strong public policy of the forum in which the suit is brought." Argueta, 87 F.3d at 325
6  (quoting Bremen, 407 U.S. at 18, and citing Carnival Cruise Lines v. Shute, 499 U.S. 585,
7  591 (1991)).

## III.   DISCUSSION

Plaintiff does not argue that enforcement of the forum selection clause would be improper because it is the result of fraud, that it would be gravely difficult and inconvenient to litigate in the selected forum, or that enforcement of the clause would contravene a strong public policy. Rather, he argues that the contract which includes the forum selection clause does not govern the actions at issue in the case, and thus, does not apply at all to his claims. Thus, this dispute comes down to whether or not there are two "general partnerships" – the overall Almaz partnership that Plaintiff alleges exists, or only the Fund I General Partnership. As the documents and history demonstrate the formal existence of only one general partnership – the Fund I General Partnership – the Court finds Plaintiff's claims covered by that Agreement, and finds that Plaintiff is bound by that contract's mandatory forum selection clause.

### A.   Only One General Partnership Formally Exists

Plaintiff alleges that there are two general partnerships between the parties. Opp'n at 9 ("Defendant is attempting to conflate, if not ignore, the Almaz general partnership between Plaintiff and Defendant that the parties and Bowman originally created in 2007 with a vehicle that Almaz created for the limited purposes of governing Almaz's role in Fund I."). Plaintiff alleges that there is a business called "Almaz," which is "simply a general partnership between Plaintiff and Defendant," id. at 4-5, and that in addition, there is "Almaz Capital," a limited company "incorporated in the Cayman Islands." Id. Plaintiff's explanation for the two partnerships was that "[r]ather than simply incorporating domestically and having

5

1 [Almaz] serve as the general and managing partner of Fund I, Almaz created [Almaz Capital] to serve in that role." Id. Thus, Plaintiff's main argument is that Almaz Capital is a distinct and separate entity from Almaz that is subservient to the firm. He then argues that the allegations in his Complaint pertain exclusively to Defendant's conduct with regards to Almaz and are independent of both Fund I and Almaz Capital, and accordingly are not subject to the forum selection clause in the contracts governing the Almaz Capital general partnership.

Defendant argues in response that the suggestion that there are two general partnerships has no basis in fact. Defendant points out that Plaintiff does not offer any concrete evidence to support this contention. There are no allegations that the "Almaz" general partnership is incorporated in any jurisdiction. There are no allegations that it is reflected in any written agreement between the parties. There are no allegations that Almaz ever issued K-1s or like forms for tax purposes. Plaintiff allows that "Almaz" has no board of directors, no administrative committee, or investment committee. Opp'n at 6. It also appears the venture's website and logo refer to Almaz Capital, not "Almaz." Compl. ¶¶ 20, 28.

Defendant makes several other arguments supporting the notion that there is not a second general partnership of "Almaz" separate from Almaz capital, but the complete lack of any evidence of corporate structures, incorporation, written agreement, or any other evidence to support the existence of this second general partnership is conclusive. While there was the idea between Plaintiff and Defendant to create a venture capital fund in 2007, that idea came to fruition with the creation of Almaz Capital as the general partner investing in Fund 1. This general partnership was incorporated, has a governing written agreement, and corporate structures.[2] Moreover, the Partnership Agreement for Almaz Capital has an integration

---

[2] See, e.g., Galitsky Decl. Ex. A at 6 ("Section 2.1 Restrictions on Transfer) ("None of the Shareholders . . . may . . . sell, assign, [or] transfer . . . any Shares in the Company . . . unless (i) that Shareholder. . . has either (A) fully complied with the provisions of Sections 2.2 through 2.6 for the Transfer . . . ."); id. at 10 ("Section 4.1 Other Transfer Restrictions) ("[A]ny Person not already a Shareholder who acquires Shares from a Shareholder pursuant to Section 2 . . . shall execute an Agreement to Adhere and from that point forward shall be deemed to be a Shareholder for

6

1 clause, which states the "Agreement contains the entire agreement and understanding of the
2 parties hereto in respect of the subject matter contained herein and supersedes all prior
3 agreements and understandings between the Company and other parties to his Agreement
4 with respect to such subject matter." Galitsky Decl. Ex. A at 18. Therefore, to the extent
5 there was a prior oral agreement creating a general partnership to create a venture capital
6 fund, it ceased to exist once the terms of the partnership were reduced to writing.

Accordingly, the operative general partnership is that of "Almaz Capital," and it is governed by that partnership's written partnership agreement.

### B. The Partnership's Forum Selection Clause Applies to Plaintiff's Claims

The forum selection clause in the Partnership Agreement only applies if Plaintiff's claims are within its scope. Plaintiff argues the forum selection clause does not apply because his claims relate only to the "Almaz" general partnership, and not to his duties and obligations under the Fund I ("Almaz Capital") Partnership agreement or shareholder agreement. Defendants argue that since the only partnership agreement between the parties is the Almaz Capital partnership, governed by the agreements, the disputes between the parties must relate to this agreement.

"Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 514 (9th Cir. 1988) (holding that tortious interference with prospective economic advantage and unfair trade practices claims fell under agreement selecting Italian law; inquiry whether claims can be "adjudicated without analyzing whether the parties were in compliance with the contract").

Here, with respect to Plaintiff's intellectual property claims, the Complaint alleges that in October 2011, Defendant "abused the Almaz Logo and the Almaz Mark by creating Fund II without Plaintiff's consent or authorization, and by soliciting capital investment into

---

all purposes of this Agreement."); id. at 18 ("Section 8.11 Termination") ("This Agreement, and the respective rights and obligations of the Shareholders and the Company, shall terminate upon . . . [either] (i) the sale of all or substantially all of the assets or business of the Company by merger, sale of assets . . . , or (ii) with respect to each Shareholder, at such time such Shareholder is no longer the registered holder of any Shares.").

7

Fund II without Plaintiff's consent or authorization." Compl. ¶ 67. Plaintiff admits, however, that he and Defendant jointly own the brand by virtue of their partnership. Id. ¶ 44 ("Plaintiff . . . retains equal control with Defendant of the Almaz intellectual property rights, including all trademarks and copyrights."); id. ¶ 63 ("Defendant is and has been aware of the partnership's ownership of the Almaz Logo and the Almaz Mark . . . ."). Thus, to determine whether Defendant's alleged activities amount to infringement or unfair competition, a Court must first determine whether they are permitted or proscribed under the Partnership Agreement.

Alternatively, Plaintiff contends that the parties did not intend the forum selection clause to cover these causes of action because they allegedly excluded from the Partnership Agreement language regarding protection of the brand. Opp'n at 9. Specifically, the Opposition, citing the Loukianoff Declaration, states that the parties: "considered including a clause in the [Partnership Agreement] that would protect the ALMAZ mark. However, both parties as well as the Class B Shareholder agreed to exclude any mention of the ALMAZ brand from the [Partnership Agreement] because all the signatories recognized that the limited purpose of the [Partnership Agreement] was to define the relationships of the shareholders for [Almaz Capital]." Id.

The Loukianoff Declaration does not contain such an explanation for the exclusion of a term regarding the Almaz Capital brand. Rather, the declaration states "Defendant and Charles Ryan, a Class B Shareholder under [the Partnership Agreement], insisted that this section should be removed to keep the focus of the [Partnership Agreement] limited and to avoid confusion." Loukianoff Decl. ¶ 25. This does not appear to constitute an agreement to exclude claims regarding the brand from the forum selection clause. The Loukianoff Declaration also refers to an email from Plaintiff to Defendant, dated March 23, 2010, which Plaintiff suggests contains evidence of the parties' negotiations regarding a brand provision. See Loukianoff Decl. ¶ 25 ("I proposed to Defendant, the inclusion of a section that prohibited the use of the Almaz brand 'by such Shareholder or any of its Affiliates, directly or indirectly, for commercial purposes without the expressed written consent of both

8

Founders' . . . . Attached hereto as Exhibit 'C' is a true and correct copy of the e-mail correspondence I sent to Defendant."). The email states only "1. Removed clause regarding brand." Id. Ex. C. The Court does not find this evidence supports Plaintiff's claims. Nor does the Court look to parole evidence to decide the question when the contract states it contains the entire agreement and understanding of the parties. Galitsky Decl. Ex. A at 18.

Regarding his torts claims, Plaintiff contends that "[t]he fact that a subservient corporation has a clause that permits said corporation from removing [sic] persons from its investment, or any other, committee has no relevance to Defendant's defamatory statements that Plaintiff is no longer an Almaz partner." Opp'n at vi. However, as there is no evidence of a general partnership called "Almaz," any statements made by Defendant regarding Plaintiff's status with the partnership would necessarily relate to his role in Almaz Capital. Plaintiff's role in Almaz Capital, in turn, is expressly set forth in the terms of the Partnership Agreement. Accordingly, to assess the veracity of Defendant's alleged statements, a court would necessarily resort to the terms in the agreement that pertain to Plaintiff's status as a shareholder and member of Almaz Capital's advisory committees. See, e.g., Galitsky Decl. Ex. A at 5 (describing grounds for removal of shareholders with or without cause); id. at 11-12 (describing process for removing Administrative Committee members based on termination of a shareholder); id. at 12 (describing process for removing Investment Committee members based on termination).

Plaintiff also claims that his tort claims arise out of Defendant's alleged statements that "Geoff Baehr has replaced him as a partner of Almaz." Opp'n at 11. Significantly, Plaintiff admits in the Complaint that these statements implicate the Partnership Agreement. Specifically, Plaintiff purportedly advised Defendant in an email that: "[Y]ou have engaged in actions that are in conflict with our agreements and arrangement. Most recently I heard . . . that you have publicly declared that Geoff Baehr joined Almaz as a partner, and that he is holding meetings on our behalf in that capacity. You have no right to appoint a partner or offer employment to anyone else, without my consent – as this is in direct violation of our agreement and the shareholders agreement for fund I [i.e., the Partnership Agreement]."

9


Compl. ¶ 43. For all these reasons, the Court finds the claims are covered by the Partnership Agreement, and thus, subject to the forum selection clause.[3]

### C.  Preliminary Injunction Issue

Plaintiff argues that even if this court determines the forum selection clause applies, it can still retain jurisdiction for the purpose of ruling on Plaintiff's motion for preliminary injunction, scheduled to be heard on April 13, 2012. The cases where courts have retained some measure of jurisdiction after a determination to enforce a forum selection clause, stand for the more narrow proposition that a court may consider whether the parties intended to 4preclude the issuance of an injunction to secure assets pending a final judgment in the designated forum. See Polar Shipping Ltd. v. Oriental Shipping Corp., 680 F2d 627, 633 (9th Cir. 1982); Hendricks v. Bank of America, N.A., 408 F.3d 1127, 1138 (9th Cir. 2005). In situations more similar to this one, courts have declined to rule on preliminary injunctions. See, e.g., Robin Singh Educ. Servs., Inc. v. Test Masters Educ. Servs., Inc., No. 03-4436, 2003 U.S. Dist. LEXIS 26762, at *14 (C.D. Cal. Aug. 13, 2003) (transferring action and declining to rule on plaintiff's motion for preliminary injunction). Since the preliminary

---

[3] At the hearing, for the first time, Plaintiff argued that the case Sims v. Paramount Gold & Silver Corp., No. 10-356, 2010 U.S. Dist. LEXIS 135661 (D. Ariz. Dec. 20, 2010), required denying the motion to dismiss in this case. The Court gave Defendant the opportunity to respond to this case by letter brief, which he did on March 27, 2012. Dkt. 27. The Court has carefully reviewed the Sims case and Defendant's letter brief, and finds the case does not alter its opinion in this matter. In Sims, first of all, the plaintiff at least had some evidence of a purported second agreement between the parties that did not include a forum selection clause. Sims, 2010 U.S. Dist. LEXIS 13566, at *5-6. While the court found this evidence unconvincing, there is not any such evidence presented here.

Moreover, in Sims, the Court determined that some of the plaintiff's claims were covered by the forum selection clause and some were not. For example, the court declined to find that claims related to defendant's use of plaintiff's likeness were predicated on the employment agreement because plaintiff sought relief for use of his likeness during a period of time after defendant had terminated the agreement. Id. at *17-18. Here, Defendant's purported conduct (misrepresenting Plaintiff's role in the business and has used the partnership's intellectual property to expand the business without Plaintiff's consent or participation) has taken place while the relevant agreement is still in place. For example, Defendant argues that determination of whether Plaintiff's claims are true implicates specific terms in the Partnership Agreement. See, e.g., Galitsky Decl. (dkt. 10) Ex. A at 5 (describing grounds for removal of shareholders with or without cause), id. at 12 (discussing process for removing committee members based on termination).

Finally, the Court agrees that the fact that all aspects of ownership of the business, and by extension ownership and use of its intellectual property, may not be set forth in the agreement does not preclude enforcement of the forum selection clause. See Omron Healthcare, Inc. v. Maclaren Exports, Ltd., 28 F.3d 600, 602 (7th Cir. 1994) (holding parties' intellectual property dispute governed by implied terms of agreement to structure business relationship).

10

injunction deals with the main issues in the case, ruling on it now would be a way to get around the forum selection clause. Thus, the Court declines to rule on the motion for preliminary injunction.

## IV. CONCLUSION

For the forgoing reasons, the Court GRANTS the motion to dismiss due to the forum selection clause, and DECLINES to rule on the motion for preliminary injunction.

**IT IS SO ORDERED.**

Dated: April 4, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE