1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PETER N. LOUKIANOFF, et a.,

          Plaintiffs,

  v.

ALEXANDER "SASHA" GALITSKY, et al.,

          Defendants.

_____/

No. C 12-00296 CRB

**ORDER GRANTING MOTION TO DISMISS**

      This dispute is a result of the apparent fall-out between business partners in a venture capital firm. Plaintiff Peter Loukianoff ("Plaintiff") and Defendant Alexander "Sasha" Galitsky ("Defendant") created a venture capital firm together named Almaz sometime in 2007. They then created and funded a venture fund that invested in Russian Commonwealth of Independent States ("CIS") technology companies ("Fund I"). This fund was governed by a partnership and shareholder agreement. Defendant then allegedly began creating and funding a second fund ("Fund II"), with the Almaz name, but without the participation of Plaintiff. Plaintiff filed suit against Defendant for violation of the Lanham Act (15 U.S.C. § 1125(a)), the California Uniform Trade Secrets Act (Cal. Civ. Code §§ 3426 *et seq.*), the California Unfair Business Practices Act (Cal. Bus. & Prof. Code §§ 17200 *et seq.*), as well as tortious interference with prospective economic relations, defamation, common counts, and declaratory relief. Defendant now moves to dismiss, arguing that the contract governing the parties' relationship has a forum selection clause requiring litigation in the Cayman

1   Islands, or in the alternative, requesting an order to compel arbitration under the same

2   agreements.  Since the partnership agreement governing Fund I is the only written

3   partnership agreement between the parties, and the allegations relate to issues covered in the

4   Agreement, the Court GRANTS the motion to dismiss.  The Court DECLINES to rule on the

5   motion for preliminary injunction.

6   **I.        FACTUAL BACKGROUND**

7            Around early 2007, Plaintiff, Defendant and a third party, Joe Bowman, decided to

8   partner together and create an independent business that would establish and manage venture

9   capital funds, which would then be invested in technology companies in Russia and the CIS.

10  Compl. (dkt. 1) ¶ 15.  Plaintiff was based in Silicon Valley because his primary responsibility

11  was soliciting U.S. capital investment and managing Almaz's domestic operations.

12  Loukianoff Decl. (dkt. 17) ¶ 4.  Defendant and Bowman were located in Europe where they

13  had better access to the Russian start-up market.  Id.  In the second quarter of 2007, Plaintiff,

14  Defendant, and Bowman each provided checks to Bowman for the purpose of forming the

15  partnership.  Compl. ¶ 17.  In the summer of 2007, the three "decided that the name of their

16  partnership would be called 'Almaz,' 'Almaz Capital Partners' and/or 'Almaz Capital' (the

17  'Almaz Mark')."  Id. ¶ 18.  "In November 2007, Plaintiff, Defendant and Bowman created a

18  Cayman Islands company called Almaz Capital Partners, Ltd. . . . ."  Id. ¶ 23.

19           The parties entered into the Partnership Agreement in June 2010.  See Galitsky Decl.

20  (dkt. 10) Ex. A.  Galitsky and Loukianoff are the "Initial Class A Shareholders"; Mr. Charles

21  Ryan is the "Initial Class B Shareholder"; and Messrs. Pavel Bogdonov and Yuriy Fedorov

22  are the "Initial Class C Shareholders."  Id. at 4.  The Partnership Agreement defines the

23  shareholders' respective rights and obligations in connection with the management of the

24  partnership and the partnership's assets and investments. The partnership's investments are

25  made through "funds," each of which has a "general partner" and "limited partners" – third

26  party entities or individuals.  Galitsky Decl. ¶ 3.  It is customary that the general partners and

27  limited partners of a fund, in turn, enter into an agreement.  Id.  In this case, Almaz, as

28  general partner, formed one fund – Almaz Capital Russia Fund I, L.P. ("Fund I") – which is

**United States District Court**
For the Northern District of California

2

United States District Court
For the Northern District of California

governed by the "Amended and Restated Agreement of Limited Partnership of Almaz

Capital Russia Fund I, L.P. <u>Id.</u>[1]

The Partnership Agreement contains a choice-of-law provision, providing that: "[It]

will be governed by and construed in accordance with the laws of the Cayman Islands . . . .

In furtherance of the foregoing, the internal law of the Cayman Islands will control the

interpretation and construction of this Agreement, even if under such jurisdiction's choice of

law or conflict of law analysis, the substantive law of some other jurisdiction would

ordinarily apply."  Galitsky Decl. Ex. A at 17.  The Partnership Agreement also states that:

> [E]ach of the parties hereto hereby irrevocably and unconditionally submits, for
> itself or himself and its or his property, to the exclusive jurisdiction of any
> Cayman Islands court and any appellate court presiding thereover, in any action
> or proceeding arising out of or relating to this Agreement or the transactions
> contemplated hereunder . . . .  Each of the parties hereto irrevocably and
> unconditionally waives, to the fullest extent it or he may legally and effectively
> do so, any objection that it or he may now or hereafter have to the laying of
> venue of any suit, action or proceeding arising out of or relating to this
> Agreement or the transactions contemplated hereunder or thereunder in any
> court sitting in the Cayman Islands.  Each of the parties hereto irrevocably
> waives, to the fullest extent permitted by law, the defense of an inconvenient
> forum to the maintenance of such action or proceeding in any such court.

Galitsky Decl. Ex. A at 18.

Plaintiff alleges that in October 2011, Defendant "began using the Almaz Logo and

the Almaz Mark and the goodwill associated with the mark and logo, to elicit venture capital

investments to be placed by Defendant into a separate fund to be managed without Plaintiff's

involvement."  Compl. ¶ 38.  Specifically, Plaintiff asserts that on October 20, 2011,

Defendant notified Plaintiff by email that "he and some other partners and investors in Fund I

were going to start a new fund for investing in Russia without Plaintiff's involvement ('Fund

II')."  <u>Id.</u> ¶ 40.  Plaintiff replied: "We have not decided who will remain in control of the

Almaz brand after the separation and certainly did not agree on the terms of my exit. . . .

---

[1]  The parties' written agreements are not attached to the Complaint, but appear to be referenced in paragraph 43.  <u>See</u> Compl. ¶ 43 (In an email from Mr. Loukianoff to Mr. Galitsky, Plaintiff states, "You have no right to appoint a partner or offer employment to anyone else, without my consent – as this is in direct violation of our agreement and the shareholders agreement for fund I.").

However, I think we should tell the [limited partners of Fund I] that we will continue to work together to successfully complete Almaz I, and that there is an intention to raise another fund in the future, but not under the same management." Id. ¶ 41.  Thereafter, Plaintiff and Defendant attempted to negotiate the terms by which Defendant could proceed with a separate fund. Id. ¶ 42.  "Throughout the entirety of these negotiations, Plaintiff insisted on being compensated for his half of the [Almaz] brand value, including all intellectual property rights such as trademarks and copyrights, to no avail." Id.  Plaintiff then filed this action. Defendant then moved to dismiss pursuant to the forum selection clause.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move to dismiss an action for improper venue.  Under Ninth Circuit law, a motion to dismiss based on a forum selection clause is treated as a challenge to venue under Rule 12(b)(3), and the district court therefore may consider facts and pleadings outside the scope of the complaint. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996).  The Court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party. Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004).  "Whether to hold a hearing on disputed facts and the scope and method of the hearing is within the sound discretion of the district court." Id. at 1139.

Generally, courts will enforce a forum selection clause, even one that requires submission of the dispute to a foreign court, unless the party challenging the clause can clearly show that its enforcement would be "unreasonable under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).  Forum selection clauses selecting a specific venue are mandatory when the parties submit to the "exclusive jurisdiction" of that venue. Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989) ("[W]here venue is specified with mandatory language, the clause will be enforced.").

Consistent with the "presumption in favor of enforcing [a] forum selection clause," TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc., 915 F.2d 1351, 1355 (9th Cir. 1990), the Ninth Circuit has held that a forum selection clause must be enforced unless

**United States District Court**
For the Northern District of California

1   the party opposing it clearly shows (1) that the clause "was the result of fraud, undue

2   influence, or overweening bargaining power," (2) that forum identified in the clause is "so

3   'gravely difficult and inconvenient' that the complaining party will 'for all practical purposes

4   be deprived of its day in court,'" or (3) that enforcement of the clause would "contravene a

5   strong public policy of the forum in which the suit is brought." <u>Argueta</u>, 87 F.3d at 325

6   (quoting <u>Bremen</u>, 407 U.S. at 18, and citing <u>Carnival Cruise Lines v. Shute</u>, 499 U.S. 585,

7   591 (1991)).

8   **III.    DISCUSSION**

9            Plaintiff does not argue that enforcement of the forum selection clause would be

10  improper because it is the result of fraud, that it would be gravely difficult and inconvenient

11  to litigate in the selected forum, or that enforcement of the clause would contravene a strong

12  public policy.  Rather, he argues that the contract which includes the forum selection clause

13  does not govern the actions at issue in the case, and thus, does not apply at all to his claims.

14  Thus, this dispute comes down to whether or not there are two "general partnerships" – the

15  overall Almaz partnership that Plaintiff alleges exists, or only the Fund I General Partnership.

16  As the documents and history demonstrate the formal existence of only one general

17  partnership – the Fund I General Partnership – the Court finds Plaintiff's claims covered by

18  that Agreement, and finds that Plaintiff is bound by that contract's mandatory forum

19  selection clause.

20          **A.    Only One General Partnership Formally Exists**

21          Plaintiff alleges that there are two general partnerships between the parties.  Opp'n at

22  9 ("Defendant is attempting to conflate, if not ignore, the Almaz general partnership between

23  Plaintiff and Defendant that the parties and Bowman originally created in 2007 with a vehicle

24  that Almaz created for the limited purposes of governing Almaz's role in Fund I.").  Plaintiff

25  alleges that there is a business called "Almaz," which is "simply a general partnership

26  between Plaintiff and Defendant," <u>id.</u> at 4-5, and that in addition, there is "Almaz Capital," a

27  limited company "incorporated in the Cayman Islands." <u>Id.</u>  Plaintiff's explanation for the

28  two partnerships was that "[r]ather than simply incorporating domestically and having

United States District Court
For the Northern District of California

1   [Almaz] serve as the general and managing partner of Fund I, Almaz created [Almaz Capital]

2   to serve in that role."  Id.  Thus, Plaintiff's main argument is that Almaz Capital is a distinct

3   and separate entity from Almaz that is subservient to the firm.  He then argues that the

4   allegations in his Complaint pertain exclusively to Defendant's conduct with regards to

5   Almaz and are independent of both Fund I and Almaz Capital, and accordingly are not

6   subject to the forum selection clause in the contracts governing the Almaz Capital general

7   partnership.

8        Defendant argues in response that the suggestion that there are two general

9   partnerships has no basis in fact.  Defendant points out that Plaintiff does not offer any

10  concrete evidence to support this contention.  There are no allegations that the "Almaz"

11  general partnership is incorporated in any jurisdiction.  There are no allegations that it is

12  reflected in any written agreement between the parties.  There are no allegations that Almaz

13  ever issued K-1s or like forms for tax purposes.  Plaintiff allows that "Almaz" has no board

14  of directors, no administrative committee, or investment committee.  Opp'n at 6.  It also

15  appears the venture's website and logo refer to Almaz Capital, not "Almaz."  Compl. ¶¶ 20,

16  28.

17       Defendant makes several other arguments supporting the notion that there is not a

18  second general partnership of "Almaz" separate from Almaz capital, but the complete lack of

19  any evidence of corporate structures, incorporation, written agreement, or any other evidence

20  to support the existence of this second general partnership is conclusive.  While there was the

21  idea between Plaintiff and Defendant to create a venture capital fund in 2007, that idea came

22  to fruition with the creation of Almaz Capital as the general partner investing in Fund 1.  This

23  general partnership was incorporated, has a governing written agreement, and corporate

24  structures.[2]  Moreover, the Partnership Agreement for Almaz Capital has an integration

25

26       [2]  See, e.g., Galitsky Decl. Ex. A at 6 ("Section 2.1 Restrictions on Transfer) ("None of the
27  Shareholders . . . may . . . sell, assign, [or] transfer . . . any Shares in the Company . . . unless (i)
    that Shareholder. . . has either (A) fully complied with the provisions of Sections 2.2 through 2.6
    for the Transfer . . . ."); id. at 10 ("Section 4.1 Other Transfer Restrictions) ("[A]ny Person not
28  already a Shareholder who acquires Shares from a Shareholder pursuant to Section 2 . . . shall
    execute an Agreement to Adhere and from that point forward shall be deemed to be a Shareholder for

clause, which states the "Agreement contains the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein and supersedes all prior agreements and understandings between the Company and other parties to his Agreement with respect to such subject matter." Galitsky Decl. Ex. A at 18.  Therefore, to the extent there was a prior oral agreement creating a general partnership to create a venture capital fund, it ceased to exist once the terms of the partnership were reduced to writing.

Accordingly, the operative general partnership is that of "Almaz Capital," and it is governed by that partnership's written partnership agreement.

**B.      The Partnership's Forum Selection Clause Applies to Plaintiff's Claims**

The forum selection clause in the Partnership Agreement only applies if Plaintiff's claims are within its scope.  Plaintiff argues the forum selection clause does not apply because his claims relate only to the "Almaz" general partnership, and not to his duties and obligations under the Fund I ("Almaz Capital") Partnership agreement or shareholder agreement.  Defendants argue that since the only partnership agreement between the parties is the Almaz Capital partnership, governed by the agreements, the disputes between the parties must relate to this agreement.

"Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 514 (9th Cir. 1988) (holding that tortious interference with prospective economic advantage and unfair trade practices claims fell under agreement selecting Italian law; inquiry whether claims can be "adjudicated without analyzing whether the parties were in compliance with the contract").

Here, with respect to Plaintiff's intellectual property claims, the Complaint alleges that in October 2011, Defendant "abused the Almaz Logo and the Almaz Mark by creating Fund II without Plaintiff's consent or authorization, and by soliciting capital investment into

---

all purposes of this Agreement."); id. at 18 ("Section 8.11 Termination") ("This Agreement, and the respective rights and obligations of the Shareholders and the Company, shall terminate upon . . . [either] (i) the sale of all or substantially all of the assets or business of the Company by merger, sale of assets . . . , or (ii) with respect to each Shareholder, at such time such Shareholder is no longer the registered holder of any Shares.").

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Fund II without Plaintiff's consent or authorization."  Compl. ¶ 67.  Plaintiff admits,

2    however, that he and Defendant jointly own the brand by virtue of their partnership.  Id. ¶ 44

3    ("Plaintiff . . . retains equal control with Defendant of the Almaz intellectual property rights,

4    including all trademarks and copyrights."); id. ¶ 63 ("Defendant is and has been aware of the

5    partnership's ownership of the Almaz Logo and the Almaz Mark . . . .").  Thus, to determine

6    whether Defendant's alleged activities amount to infringement or unfair competition, a Court

7    must first determine whether they are permitted or proscribed under the Partnership

8    Agreement.

9         Alternatively, Plaintiff contends that the parties did not intend the forum selection

10   clause to cover these causes of action because they allegedly excluded from the Partnership

11   Agreement language regarding protection of the brand.  Opp'n at 9. Specifically, the

12   Opposition, citing the Loukianoff Declaration, states that the parties: "considered including a

13   clause in the [Partnership Agreement] that would protect the ALMAZ mark.  However, both

14   parties as well as the Class B Shareholder agreed to exclude any mention of the ALMAZ

15   brand from the [Partnership Agreement] because all the signatories recognized that the

16   limited purpose of the [Partnership Agreement] was to define the relationships of the

17   shareholders for [Almaz Capital]."  Id.

18        The Loukianoff Declaration does not contain such an explanation for the exclusion of

19   a term regarding the Almaz Capital brand. Rather, the declaration states "Defendant and

20   Charles Ryan, a Class B Shareholder under [the Partnership Agreement], insisted that this

21   section should be removed to keep the focus of the [Partnership Agreement] limited and to

22   avoid confusion."  Loukianoff Decl. ¶ 25.  This does not appear to constitute an agreement to

23   exclude claims regarding the brand from the forum selection clause.  The Loukianoff

24   Declaration also refers to an email from Plaintiff to Defendant, dated March 23, 2010, which

25   Plaintiff suggests contains evidence of the parties' negotiations regarding a brand provision.

26   See Loukianoff Decl. ¶ 25 ("I proposed to Defendant, the inclusion of a section that

27   prohibited the use of the Almaz brand 'by such Shareholder or any of its Affiliates, directly

28   or indirectly, for commercial purposes without the expressed written consent of both

Founders' . . . . Attached hereto as Exhibit 'C' is a true and correct copy of the e-mail correspondence I sent to Defendant.").  The email states only "1. Removed clause regarding brand."  Id. Ex. C.  The Court does not find this evidence supports Plaintiff's claims.  Nor does the Court look to parole evidence to decide the question when the contract states it contains the entire agreement and understanding of the parties.  Galitsky Decl. Ex. A at 18.

Regarding his torts claims, Plaintiff contends that "[t]he fact that a subservient corporation has a clause that permits said corporation from removing [sic] persons from its investment, or any other, committee has no relevance to Defendant's defamatory statements that Plaintiff is no longer an Almaz partner."  Opp'n at vi.  However, as there is no evidence of a general partnership called "Almaz," any statements made by Defendant regarding Plaintiff's status with the partnership would necessarily relate to his role in Almaz Capital. Plaintiff's role in Almaz Capital, in turn, is expressly set forth in the terms of the Partnership Agreement.  Accordingly, to assess the veracity of Defendant's alleged statements, a court would necessarily resort to the terms in the agreement that pertain to Plaintiff's status as a shareholder and member of Almaz Capital's advisory committees.  See, e.g., Galitsky Decl. Ex. A at 5 (describing grounds for removal of shareholders with or without cause); id. at 11-12 (describing process for removing Administrative Committee members based on termination of a shareholder); id. at 12 (describing process for removing Investment Committee members based on termination).

Plaintiff also claims that his tort claims arise out of Defendant's alleged statements that "Geoff Baehr has replaced him as a partner of Almaz."  Opp'n at 11.  Significantly, Plaintiff admits in the Complaint that these statements implicate the Partnership Agreement. Specifically, Plaintiff purportedly advised Defendant in an email that: "[Y]ou have engaged in actions that are in conflict with our agreements and arrangement.  Most recently I heard . . . that you have publicly declared that Geoff Baehr joined Almaz as a partner, and that he is holding meetings on our behalf in that capacity. You have no right to appoint a partner or offer employment to anyone else, without my consent – as this is in direct violation of our agreement and the shareholders agreement for fund I [i.e., the Partnership Agreement]."

9

United States District Court
For the Northern District of California

1  Compl. ¶ 43. For all these reasons, the Court finds the claims are covered by the Partnership

2  Agreement, and thus, subject to the forum selection clause.[3]

3  ## C.    Preliminary Injunction Issue

4       Plaintiff argues that even if this court determines the forum selection clause applies, it

5  can still retain jurisdiction for the purpose of ruling on Plaintiff's motion for preliminary

6  injunction, scheduled to be heard on April 13, 2012. The cases where courts have retained

7  some measure of jurisdiction after a determination to enforce a forum selection clause, stand

8  for the more narrow proposition that a court may consider whether the parties intended to

9  preclude the issuance of an injunction to secure assets pending a final judgment in the

10 designated forum. See Polar Shipping Ltd. v. Oriental Shipping Corp., 680 F2d 627, 633

11 (9th Cir. 1982); Hendricks v. Bank of America, N.A., 408 F.3d 1127, 1138 (9th Cir. 2005).

12 In situations more similar to this one, courts have declined to rule on preliminary injunctions.

13 See, e.g., Robin Singh Educ. Servs., Inc. v. Test Masters Educ. Servs., Inc., No. 03-4436,

14 2003 U.S. Dist. LEXIS 26762, at *14 (C.D. Cal. Aug. 13, 2003) (transferring action and

15 declining to rule on plaintiff's motion for preliminary injunction). Since the preliminary

16

17 _____

      [3] At the hearing, for the first time, Plaintiff argued that the case Sims v. Paramount Gold &
18 Silver Corp., No. 10-356, 2010 U.S. Dist. LEXIS 135661 (D. Ariz. Dec. 20, 2010), required denying
   the motion to dismiss in this case. The Court gave Defendant the opportunity to respond to this case
19 by letter brief, which he did on March 27, 2012. Dkt. 27. The Court has carefully reviewed the Sims
   case and Defendant's letter brief, and finds the case does not alter its opinion in this matter. In Sims,
20 first of all, the plaintiff at least had some evidence of a purported second agreement between the parties
   that did not include a forum selection clause. Sims, 2010 U.S. Dist. LEXIS 13566, at *5-6. While the
21 court found this evidence unconvincing, there is not any such evidence presented here.
      Moreover, in Sims, the Court determined that some of the plaintiff's claims were covered by the
22 forum selection clause and some were not. For example, the court declined to find that claims related
   to defendant's use of plaintiff's likeness were predicated on the employment agreement because plaintiff
23 sought relief for use of his likeness during a period of time after defendant had terminated the
   agreement. Id. at *17-18. Here, Defendant's purported conduct (misrepresenting Plaintiff's role in the
24 business and has used the partnership's intellectual property to expand the business without Plaintiff's
   consent or participation) has taken place while the relevant agreement is still in place. For example,
25 Defendant argues that determination of whether Plaintiff's claims are true implicates specific terms in
   the Partnership Agreement. See, e.g., Galitsky Decl. (dkt. 10) Ex. A at 5 (describing grounds for
26 removal of shareholders with or without cause), id. at 12 (discussing process for removing committee
   members based on termination).
27    Finally, the Court agrees that the fact that all aspects of ownership of the business, and by
   extension ownership and use of its intellectual property, may not be set forth in the agreement does not
28 preclude enforcement of the forum selection clause. See Omron Healthcare, Inc. v. Maclaren Exports,
   Ltd., 28 F.3d 600, 602 (7th Cir. 1994) (holding parties' intellectual property dispute governed by
   implied terms of agreement to structure business relationship).

1   injunction deals with the main issues in the case, ruling on it now would be a way to get

2   around the forum selection clause.  Thus, the Court declines to rule on the motion for

3   preliminary injunction.

4   **IV.    CONCLUSION**

5        For the forgoing reasons, the Court GRANTS the motion to dismiss due to the forum

6   selection clause, and DECLINES to rule on the motion for preliminary injunction.

7        **IT IS SO ORDERED.**



10   Dated: April 4, 2012

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California